UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRIME ALLIANCE BANK, INC.,
SERTANT CAPITAL, LLC,

       Plaintiff,

v.

THE GREAT LAKES TISSUE
COMPANY, TISSUE DEPOT, INC.,
and CHEBOYGAN ENERGIES &
BIOFUELS CORP.,

       Defendants.

Case No. 23-10564
Honorable Laurie J. Michelson

---

## OPINION AND ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR A DEFAULT JUDGMENT [73]

---

Sertant Capital, LLC entered into a Master Lease Agreement with Great Lakes Tissue Company under which GLT agreed to lease certain equipment from Sertant for about $68,000 per month. Sertant assigned certain rights under the lease to Prime Alliance Bank, Inc., but it retained others. According to Sertant and PAB, GLT materially breached the lease agreement by, among other things, failing to pay the monthly rent due, changing ownership or management without Sertant or PAB's prior written consent, keeping the equipment in disrepair, and transferring ownership of some of the leased equipment without Sertant or PAB's authorization or consent. So on March 10, 2023, Sertant and PAB sued GLC for breach of contract, conversion, and claim and delivery. (ECF No. 1, PageID.2, 14.)

On October 2, 2023, Plaintiffs filed an amendment complaint (ECF No. 40) adding Cheboygan Energies & Biofuels Corporation ("CEBC") and Tissue Depot Inc. as defendants. Plaintiffs' amended complaint raises the same claims from the original complaint, and an additional claim for "avoidance of fraudulent transfers"—alleging that GLT transferred its assets to CEBC and Tissue Depot to defraud its creditors. (*Id.* at PageID.524). The summons and amended complaint were served upon Tissue Depot and CEBC's Registered Agent, Donald Swenson, on October 20, 2023, and electronically served via ECF on GLT's counsel. (*See* ECF Nos. 57, 58.) On October 24, 2023, the Court granted GLT's counsels' motions to withdraw, and gave GLT until October 31, 2023, to secure new counsel. (ECF No. 53, PageID.2809.)

On November 17, 2023, the Clerk of Court entered a default against GLT after it failed to obtain new counsel. (*See* ECF Nos. 64–66.) And on November 21, 2023, the Clerk entered defaults against Tissue Depot and CEBC after they failed to respond to the amended complaint. (*See* ECF Nos. 69, 70.) On November 20, 2023, following a hearing, the Court granted Plaintiffs' unopposed second motion for a preliminary injunction (ECF No. 51), thereby giving Plaintiffs immediate possession of the leased equipment pending final resolution of this case. (*See* Text-Only Order, November 20, 2023.)

In sum, since November 2023, there has been no counsel representing corporate entity GLT and no appearance or defense from Tissue Depot and CEBC. Now before the Court is Plaintiffs' unopposed motion for a default judgment (ECF No.

73) against all Defendants. For the reasons that follow, the Court GRANTS IN PART Plaintiffs' motion.

## I. Background

Entry of default judgment is a two-step process under the Federal Rules of Civil Procedure. First, "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, the clerk may enter default judgment against a defendant only when the plaintiff seeks a "sum that can be made certain by computation" and the defendant is neither a minor nor incompetent. Fed. R. Civ. P. 55(b)(1). "In all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

Because Plaintiffs seek a default judgment under Rule 55(b)(2), the Court accepts as true the well-pleaded factual allegations in their amended complaint, except those relating to damages, as though they were admitted or established by proof, as well as all reasonable inferences that can be drawn from the amended complaint, *See, e.g., Ayers v. Receivables Performance Mgmt., L.L.C.*, No. 15-12082, 2016 WL 5402962, at *1 (E.D. Mich. Sept. 28, 2016); *see also New London Tobacco Market, Inc. v. Kentucky Fuel Corp.*, 44 F.4th 393, 403 (6th Cir. 2022) ("The effect of a default judgment is that the 'factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" (quoting in part 10A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure Civil § 2688.1 (4th ed. 2022))).

3

On October 13, 2022, Sertant and GLT entered into Master Lease Agreement under which GLT leased certain equipment from Sertant. (ECF No. 40, PageID.527.) The equipment consisted of 67 units of property[1]—namely heavy machinery used to operate GLT's paper mill in Cheboygan, Michigan. (*Id.* at PageID.527–530.) Under the lease, GLT agreed, among other things: (1) that Sertant would retain ownership of the equipment; (2) to pay $68,082 per month as rent for an initial contract term of 48 months, and then any applicable renewal term; (3) to maintain the equipment in good operating order, condition, repair and appearance; (4) to permit Sertant to enter and inspect the equipment; (5) to possess the equipment in GLT's name only and not transfer possession of the equipment without Sertant's prior written consent; and (6) that if GLT failed to perform any of its obligations or defaulted under the agreement, Sertant could declare GLT in default, recover any past due payments, plus any future payments that become due, take possession of the equipment, and GLT would pay Sertant's costs and expenses, including reasonable attorneys' fees. (*Id.* at PageID.531–532.) Sertant assigned certain initial rent payments and residual interests rights under the lease to PAB. (*Id.* at PageID.531.)

At all relevant times prior to January 12, 2023, Great Lakes Tissue Group, LLC was the sole shareholder of GLT. (*Id.* at PageID.532.) On January 12, 2023, GLT entered into a merger agreement with Patriot Advanced Environmental Technologies, LLC, whereby GLT's interests were transferred to PAET. (*Id.*) The

---

[1] A detailed list of the equipment is set forth at (ECF No.73-1, PageID.2890–2892).

transfer of GLT's interests to PAET and the subsequent change in management of GLT were done without Plaintiffs' knowledge or consent. (*Id.*) And in March or April 2023, after Plaintiffs filed their initial complaint against GLT in this case, GLT transferred its interests in its hydroelectric plant to CEBC, and its remaining assets (including Plaintiffs' equipment) to Tissue Depot for less than the reasonably equivalent value. (*Id.* at PageID.523–525.) After GLT transferred its remaining assets to Tissue Depot and CEBC, "GLT was defunct and ceased operations. GLT's employees became employees of Tissue Depot. Tissue Depot took possession of the equipment and used it to operate [GLT's] paper mill." (*Id.* at PageID.524.) PAET is a shareholder of GLT, Tissue Depot, and CEBC, and Donald Swenson, is the director of GLT, CEBC, and PAET. (*Id.*)

Plaintiffs say that GLT materially breached the lease agreement or defaulted under the lease by, among other things, failing to pay rent due under the lease in January and February of 2023, changing ownership or management of GLT without Plaintiffs' prior written consent resulting in a material deterioration of GLT's creditworthiness, refusing to permit Plaintiffs to inspect the equipment upon request, failing to keep up or maintain the equipment in good repair, failing to provide financial and business information on request, falsely representing ownership or possession of missing equipment and/or selling, scrapping or disposing of missing equipment without Plaintiffs' knowledge or consent. (*Id.* at PageID.532–533.) Plaintiffs sought damages "for at least $2,271,354.51 as of February 16, 2023 . . . plus interest, late charges, default interest, costs, and attorneys' fees" as well as

immediate possession of the leased equipment that remained in Defendants' possession. (*Id.* at PageID.536.)

## II. Jurisdiction

When considering a motion for default judgment, the Court should first find that it has jurisdiction. *See Ayers,* 2016 WL 5402962, at *1. Indeed, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is diversity of citizenship and the amount in controversy exceeds $75,000. (*See* ECF No. 40, PageID.522.) And venue is proper as a substantial part of the events giving rise to this cause of action, including the location of the property at issue, occurred in the Eastern District of Michigan.

The Court's personal jurisdiction requires closer inspection. While a "defendant may waive a personal jurisdiction challenge . . . courts have nonetheless *sua sponte* addressed the issue prior to entering a default judgment." *Ayers,* 2016 WL 5402962, at *1 (citing *Amica Mut. Ins. Co. v. Epplett*, No. 15-10442, 2015 WL 5439946, at *4 (E.D. Mich. Sept. 15, 2015)). To determine whether personal jurisdiction is met in the case of a default judgment, the Court looks to whether the well-pled allegations in the complaint, taken as true, and supplemented by affidavits, amount to a prima facie showing of personal jurisdiction. *See Amer. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988). !

Personal jurisdiction comes in two forms: general and specific. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). General jurisdiction is proper when a defendant's "contacts with the forum state are of such a continuous

and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (quoting *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)). Specific jurisdiction, on the other hand, is proper only when "claims in the case arise from or are related to the defendant's contacts with the forum state." *Id.*

The Court's general personal jurisdiction over GLT, a Michigan corporation with extensive and continuous ties to the State, is evident. (ECF No. 40, PageID.522.) Indeed, GLT participated in the litigation and raised no jurisdictional challenge. Tissue Depot and CEBC, on the other hand, are both incorporated and have their principal places of business in Wisconsin. (*Id.*) So the Court will consider whether it has specific jurisdiction over Tissue Depot and CEBC.

"The exercise of [specific] personal jurisdiction [in a diversity action] is valid only if it meets both the state long-arm statute and constitutional due process requirements." *Gerber v. Riordan*, 649 F.3d 514, 517 (6th Cir. 2011); *see also Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 674 (6th Cir. 2023) ("Michigan law requires that courts separately analyze whether a court sitting in Michigan can properly exercise personal jurisdiction over a defendant under the state's long-arm statute and under the Due Process Clause.")

Start with Michigan's long-arm statute. The "statute allows courts . . . to exercise personal jurisdiction over a defendant when a 'plaintiff[ ] . . . show[s] that their cause of action arose out of one of the relationships enumerated in the statute.'"

*Sullivan*, 79 F.4th at 667. Several subsections could potentially apply on the facts recited in Plaintiffs' amended complaint, but the most obvious are subsections one and three. Subsection one allows the exercise of personal jurisdiction over any defendant that transacts "any business within the state." Mich. Comp. Laws § 600.715 (1). Subsection three allows the exercise of personal jurisdiction over any defendant that owns, uses, or possesses any "real or tangible personal property situated within the state." Mich. Comp. Laws § 600.715 (3).

Plaintiffs allege that Tissue Depot and CEBC took ownership, control, and/or possession of GLT's property, including its hydroelectric plant, its paper mill, equipment, desks, and offices. (ECF No. 40, PageID.523–525.) And this real and tangible property was located, and furnished, in Michigan. (*Id.*) Further, Plaintiffs' claims in this case arise in part from this conduct, as the transfers implicate the property at issue in the breach of contract, conversion, and fraudulent transfer claims. Tissue Depot and CEBC's conduct in Michigan thus satisfies at least two subsections of Michigan's long-arm statute. *See* Mich. Comp. Laws § 600.715(1), (3); *see also Sullivan,* 79 F.4th 651, 667 (finding that "when a defendant conducts even the slightest act of business in Michigan, a sufficient transaction of business occurs under § 600.715(1)." (internal quotation marks omitted)).

Next, courts apply "a three-part test to determine whether the exercise of personal jurisdiction . . . comports with constitutional due process." *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016). "'First, the defendant must *purposefully avail* himself of the privilege of acting in the forum state or causing a

consequence in the forum state.'" *Id.* (quoting *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007)). Second, the claims "'must arise out of or relate to the defendant's contacts' with the forum." *Ford*, 592 U.S. at 359 (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of California*, 582 U.S. 255, 262, (2017)); *see also AlixPartners*, 836 F.3d at 549. Third, "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *AlixPartners*, 836 F.3d at 549–50 (quoting *Air Prods.*, 503 F.3d at 550).

Per the allegations in the amended complaint, these requirements are met here. First, CEBC and Tissue Depot purposefully availed themselves of the privilege of acting in the forum by entering into agreements with GLT to conduct business in Michigan, and taking ownership, possession and/or control of GLT's physical assets in Michigan. *See Sullivan*, 79 F.4th at 671 (explaining that purposeful availment requires a showing "that the defendant deliberately reached out beyond its home— by, for example, exploi[ting] a market in the forum State or entering a contractual relationship centered there." (internal quotation marks omitted) (alternations in original)). Second, CEBC and Tissue Depot's conduct in Michigan is sufficiently affiliated or connected with the underlying controversy at issue here. *Id.* at 671–72 (stating that the "Constitution requires an affiliation between the forum and the underlying controversy" and noting that this "is a 'lenient standard,' requiring only that the cause of action have a 'substantial connection' to the defendant's activity in the state." (internal citations and quotation marks omitted)). CEBC and Tissue

Depot's conduct of agreeing to take over GLT's assets, including Plaintiffs' equipment, and maintaining possession or control over those assets, is directly and substantially related to Plaintiffs' claims for conversion, breach of contract, and avoidance of fraudulent transfer.

Accordingly, as the requirements of Michigan's long-arm statute and the Due Process Clause are satisfied, the Court will exercise personal jurisdiction over all Defendants.[2]

## III. Service

Further, service was proper upon Defendants. GLT initially appeared in this matter and was represented by counsel at the time the amended complaint was filed. (*See* ECF No. 31.) So GLT was properly served the amended complaint via ECF.

---

[2] Plaintiffs allege that Tissue Depot and CEBC should be liable under a theory of successor or alter ego liability. (ECF No. 40, PageID.534 (alleging that "Tissue Depot and CEBC are successors of, and constitute a continuation of, GLT such that they should be treated as one single venture and alter egos of each other.") This would provide a distinct basis for the court to exercise personal jurisdiction over Tissue Depot and CEBC. *See Est. of Thomson ex rel. Est. of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008) (noting that "federal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court" (internal quotation marks omitted)). And, as the Court explains later in the opinion, Plaintiffs have adequately alleged alter ego liability here. *See infra* Part IV.D; *and see Franklin Cap. Funding, LLC v. Austin Bus. Fin., LLC*, 676 F. Supp. 3d 515, 533–34 (E.D. Mich. 2023) ("To determine whether an entity is the alter ego of another for purposes of establishing personal jurisdiction, the Court applies the same test for piercing the corporate veil that it uses to determine whether alter ego liability applies." (citing *Flynn v. Greg Anthony Constr. Co.*, 95 F. App'x 726, 736 (6th Cir. 2003))).

Donald Swenson, the registered agent of CEBC and Tissue Depot, was personally served the summons and amended complaint by a process server on October 20, 2023, at 14601 Atrium Way #328, Minnetonka, Minnesota 55345. (*See* ECF Nos. 57, 58.)

## IV. Liability

Next, when, as here, a plaintiff seeks a default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2), it has the burden of establishing both liability and damages. As noted above, in analyzing liability, the Court accepts as true the well-pled factual allegations of Plaintiffs' complaint, draws reasonable inferences from those allegations in their favor, and then asks whether Plaintiffs' have stated a claim upon which relief may be granted. *See Gen. Conference Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 407 (6th Cir. 2010). Plaintiffs' have satisfied this burden, in part.

Plaintiffs bring claims for breach of contract, avoidance of fraudulent transfers, conversion, and claim and delivery. (ECF No. 40.) Plaintiffs also assert alter ego or successor liability as to CEBC and Tissue Depot. The Court will analyze each in turn.

## A.

Start with the breach of contract claim. Plaintiffs do not make clear in their motion for a default judgment whether California law or Michigan law applies to the contract at issue. (*See* ECF No. 73, PageID.2882 (citing Michigan Law to calculate damages); ECF No. 41-1, PageID.551 (Master Lease Agreement provision stating that "each lease shall be governed by and construed in accordance with, the laws of

the State of California.").) But whether Michigan or California law applies—Plaintiffs have clearly stated a claim for breach of contract.

"Under California law, a breach of contract claim requires the plaintiff to prove '(1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damage to the plaintiff.'" *Malcmacher v. Jesse*, 786 F. App'x 558, 569 (6th Cir. 2019) *(*quoting *Reinhardt v. Gemini Motor Transp.*, 879 F. Supp. 2d 1138, 1143 (E.D. Cal. 2012)). Similarly, to state a claim for breach of contract in Michigan, Plaintiffs must allege "the existence and terms of a contract, that the defendant breached its terms, and that the breach caused damages to the plaintiff." *Van Buren Charter Twp. v. Visteon Corp.*, 904 N.W.2d 192, 202 (Mich. Ct. App. 2017) (citing *Miller-Davis Co. v. Ahrens Const., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014)).

The complaint alleges that GLT entered into a Master Lease Agreement (ECF No. 40-1) with Plaintiffs to lease 67 units of equipment and then breached or defaulted under the agreement in numerous ways, including : (1) failing to make the monthly payment due under the lease; (2) keeping the equipment in disrepair and refusing to allow Plaintiffs to inspect it upon request; (3) selling, disposing of, or destroying some of the equipment without Plaintiffs knowledge or consent; and (4) transferring ownership, management, or control of the company in a manner that resulted in a material decline in the company's creditworthiness. (ECF No. 40, PageID.532–533.) And, indeed, the terms of the contract make clear that such allegations, if true, amount to a breach or default and would entitle Plaintiffs to

immediate possession of the property, as well as damages, attorneys fees, and costs. (*See* ECF No. 40-1, PageID.550–551.) Accordingly, Plaintiffs have adequately stated a breach of contract claim against GLT.

## B.

Next, Plaintiffs allege that GLT transferred its assets to CEBC and Tissue Depot "with the actual intent to hinder, delay, or defraud GLT's creditor[s]," specifically Plaintiffs. (ECF No. 40, PageID.524.) In Michigan, a transfer of an asset made by a debtor is fraudulent as to the creditor, if the transfer was made with the "actual intent to hinder, delay, or defraud any creditor of the debtor." *See Dearborn St. Bldg. Assocs. LLC v. D & T Land Holdings, LLC*, No. 07-1056, 2009 WL 3011245, at *4 (W.D. Mich. Sept. 16, 2009) (citing Mich. Comp. Laws § 566.34(1)(a)).[3]

Under Michigan law, actual intent to defraud may be inferred from the "badges of fraud" listed in § 566.34(2). *Id.* The badges of fraud enumerated in the statue include:

> (a) the transfer . . . was to an insider; (b) the debtor retained possession or control of the property transferred after the transfer; (c) the transfer was . . . disclosed or concealed; (d) before the transfer was made . . . the debtor had been sued or threatened with suit; (e) the transfer was of

---

[3] A similar standard applies under California law. "A transfer is fraudulent if the debtor made the transfer or incurred the obligation as follows: (1) With actual intent to hinder, delay, or defraud any creditor of the debtor. (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction. (B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due." *In re Brun*, 360 B.R. 669, 672 (Bankr. C.D. Cal. 2007) (citing Cal. Civ. Code § 3439.04(a)).

substantially all of the debtor's assets: (f) the debtor absconded; (g) The debtor removed or concealed assets; (h) [whether] [t]he value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred; (i) the debtor was insolvent or became insolvent shortly after the transfer was made; (j) the transfer occurred shortly before or shortly after a substantial debt was incurred; (k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Mich. Comp. Laws § 566.34(2).

Plaintiffs have adequately stated a claim against GLT for fraudulent transfer.

First, they plausibly pled that GLT transferred substantially all of its assets to Tissue Depot and CEBC, and before the transfers were made, GLT had been sued or threatened with suit by Plaintiffs. Plaintiffs demanded possession of the leased equipment on February 1, 2023, and filed this suit on March 10, 2023. (*See* ECF No. 40, PageID.525.) Subsequently, in March or April of 2023, GLT transferred its hydroelectric plant—used to generate power for its paper mill—to CEBC, who then leased it to Tissue Depot. (*Id.* at PageID.524.) At the same time, GLT transferred all of its other assets to Tissue Depot, "including but not limited to all desks, books, records, employees, customer lists, buildings, intellectual property, accounts, leases, phone numbers, goodwill, environmental permits, equipment, and inventory." (*Id.*) Possession of the equipment at issue in this suit was included in the transfer to Tissue Depot. (*Id.*)

Second, GLT made the transfers without receiving a reasonably equivalent value in exchange. For example, Plaintiffs say that GLT's environmental permits were worth in excess of $21 million, yet Tissue Depot did not pay the reasonably equivalent value for those permits. (*Id.* at PageID.525.) Third, GLT concealed the

14

transfers from Plaintiffs. Fourth, "GLT was insolvent or became insolvent shortly after the transfers were made. At the time of, and after the transfer, at a fair valuation, the sum of GLT's debts was and is greater than the sum of its assets." (*Id.*) And finally, "the [t]ransfers were made to an insider . . . [PAET] was the sole shareholder of GLT. PAET is a shareholder of Tissue Depot and CEBC. Donald Swenson is director GLT, PAET, and CEBC. [And] he owns an entity that is a member of PAET." (*Id.*) Accordingly, the Court finds that Plaintiffs have adequately stated a claim against GLT for fraudulent transfer.

## C.

Next, the Court considers Plaintiffs' claims for conversion and claim and delivery.

Plaintiffs' claim and delivery count is more about the specific relief it is entitled to for the breach of contract than it is an independent claim. (*See* ECF No. 40, PageID.537 (stating that "[b]ecause of GLT's material breach of and Events of Default under the Lease, Plaintiff has a right to immediate possession of the Equipment.") The Court has already awarded Plaintiffs immediate possession over the property pending final judgment. (*See* Text-Only Order, November 20, 2023.) And indeed, per the contract, Plaintiffs are entitled to possession of the equipment. *See Novak v. Federspiel*, 646 F. Supp. 3d 878, 888 (E.D. Mich. 2022) (explaining that "claim and delivery is a possessory action not intended to resolve legal title. . . .Claim-and-delivery judgments only resolve the right of possession.)

Plaintiffs' claim for conversion, however, fails. While Plaintiffs may plead conversion in the alternative to their breach of contract claim, a conversion claim is unavailable when, as here, there is a contract that covers the subject matter, and no distinct breach of duty is asserted. *See Sudden Serv., Inc. v. Brockman Forklifts, Inc.*, 647 F. Supp. 2d 811, 815 (E.D. Mich. 2008) ("The law in Michigan is well-settled that an action in tort [including conversion] requires a breach of duty separate and distinct from a breach of contract." (internal quotations omitted)); *Beluca Ventures LLC v. Aktiebolag*, 622 F. Supp. 3d 806, 815 (N.D. Cal. 2022) (noting that under California law "a breach of duties that merely restates contractual obligations does not normally give rise to conversion").

### D.

Finally, although Tissue Depot and CEBC are not parties to the Master Lease Agreement, Plaintiffs have adequately pled alter ego or successor liability.

"Michigan courts will not pierce the corporate veil [to find alter ego liability] unless (1) the corporate entity was a mere instrumentality of another entity or individual; (2) the corporate entity was used to commit a fraud or wrong; and (3) the plaintiff suffered an unjust loss." *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co. Ltd.*, 475 F.3d 783, 798 (6th Cir. 2008) (citations omitted)): *see also In re Energy Conversion Devices, Inc.*, 621 B.R. 674, 736 (Bankr. E.D. Mich. 2020) (noting that "under Michigan law, alter ego liability and successor liability are only remedies, not independent causes of action" and collecting cases).

16

Plaintiffs plausibly alleged facts as to each of the three elements necessary to establish alter ego liability. For one, Plaintiffs allege that the Tissue Depot, CEBC, and GLT have a unity of interest and ownership "such that any individuality and separateness between them have ceased."(ECF No. 40, PageID.534–535.) Since January 12, 2023, "PAET was the sole shareholder of GLT. PAET is an eighty-three (83%) shareholder in Tissue Depot. . . . [and] PAET has an ownership interest in CEBC." (*Id.* at PageID.534.) And since GLT transferred its assets to CEBC and Tissue Depot, "there has been continuity of the enterprise between GLT, Tissue Depot, and CEBC." (*Id.* at PageID.535.) Following the transfer, GLT ceased operations, and its employees, customers, tangible assets, mill, and offices were all taken over by Tissue Depot. (*Id.*) Indeed, "Tissue Depot, CEBC and GLT operated at the same office and business locations: 437 S. Main Street, Cheboygan, Michigan; 502 S. Main Street, Cheboygan, Michigan and the hydroelectric plant on the Cheboygan River." (*Id.*) Accordingly, Plaintiffs sufficiently pled that GLT, Tissue Depot, and CEBC are mere instrumentalities of each other. *See Servo Kinetics*, 475 F.3d at 799 (finding that transfer of assets essential to running the business, including employees and customers, supported a finding that corporate entity was a mere instrumentality of another entity).

For two, it is alleged that "Tissue Depot and CEBC were conceived, intended and used as a device to avoid liability of creditors and to substitute in the place of GLT, a financially insolvent corporation." (*Id.*) This is evinced by the fraudulent transfer of GLT's assets to Tissue Depot and CEBC shortly after it was sued or

threatened with suit by Plaintiffs. And, finally, as outlined elsewhere in the opinion, Plaintiffs have suffered unjust loss as result of GLT's breach of contract. *See Servo Kinetics,* 475 F.3d at 800 (holding that plaintiff's "losses from [Defendant's] breach of contract is sufficient to constitute an unjust loss for the purpose of veil-piercing liability.")

In sum, Plaintiffs have adequately stated a claim for breach of contract, avoidance of fraudulent transfer, and claim and delivery, against all Defendants. Thus, a default judgment is GRANTED for those claims. Plaintiffs have not established liability for the conversion claim—so a default judgment as to that claim is DENIED.

## V. Damages

That leaves damages. The complaint's allegations as to damages are not simply accepted as fact, and so the Court may demand a plaintiff to prove its damages at an evidentiary hearing. *Joe Hand Promotions, Inc. v. Yakubets,* 3 F. Supp. 3d 261, 271 (E.D. Pa. 2014); *McIntosh v. Check Resolution Serv., Inc.,* No. 10-14895, 2011 WL 1595150, at *3 (E.D. Mich. Apr. 27, 2011). But such a hearing is not necessary "if sufficient evidence is submitted to support the request for damages . . . or if the amount claimed is one capable of ascertainment from definite figures in the documentary evidence or affidavits." *McIntosh,* 2011 WL 1595150, at *4 (internal citation omitted); *see also Joe Hand Promotions,* 3 F. Supp. 3d at 271, 271 n.8. Here, a hearing is not necessary because Plaintiffs' have provided sufficient documentary evidence to establish their damages.

Pursuant to the declaration of Michael J. Przekop, Plaintiffs have suffered damages in the amount of $2,706,496.72.  (ECF No. 73-1, PageID.2898.) Much of the damage calculations come directly from the governing contract. The declaration provides a clear and concise breakdown of the total amount owed by Defendants to Plaintiffs:

| Description | Amount Owed: |
| --- | --- |
| Remaining Initial Period Lease Payments | $2,267,950.40 |
| Late Fees | $51,061.73 |
| Prejudgment Interest (March 10, 2023, to April 8, 2024) | $120,124.69 |
| Attorney Fees | $230,7500.00 |
| Costs | $36,609.90 |
| Total | $2,706,496.72 |

(*Id.*)

Start with the remaining payments owed for the leased equipment. Under the Master Lease Agreement, Defendants owe Plaintiff $68,082.30 per month, for an initial period of 48 months, which equals $3,267,950.40. (*Id.* at PageID.2897.) But Defendants are "entitled to a credit of $1,000,000 based on a holdback under the lease." (*Id.*) Accordingly, Defendants owe $2,267,950.40 in initial period monthly rent payments.

19

Next, the agreement authorizes Plaintiffs to charge late charges on any past due rent, taxes, or other charges at $.05 per dollar (5%) per month of the unpaid amount. (*Id.*) The late fees are $3,404.115 per month (5% of $68,082.30 monthly rent). When the complaint was initially filed, GLT owed three months of payments for January, February, and March 2023, ($3,404.115 x 3), totaling $10,212.35. (*Id.*) As of April 1, 2024, GLT owed 12 additional months of late fees ($3,404.115 x 12), totaling $40,849.38. (*Id.*) Thus, the total late fees as of April 1, 2024, equal $51,061.73 ($40,849.38 + $10,212.35).

As for interest, Plaintiffs correctly note they are entitled to pre-judgment interest under Michigan law. *See* Mich. Comp. Laws § 600.6013(8). And Plaintiffs' calculation of the pre-judgment interest, consistent with the rates certified by the State Treasurer of Michigan, was clear and concise:

| Time Period | Number of Days | Per Diem Interest Rate | Prejudgment Interest Amount |
|---|---|---|---|
| 3/10/2023–6/30/2023 | 112 | $294.71 | $33,007.44 |
| 7/1/2023–12/31/2023 | 183 | $295.89 | $54,147.84 |
| 1/1/2024–3/9/2024 | 68 | $335.04 | $22,782.40 |
| Total Interest for 1st year (3/10/2023–3/9/2024) | | | $109,937.68 |
| 3/10/2024–4/8/2024 | 29 | $351.28 | $10,187.00 |
| Total Accrued Interest per Michigan Compiled Laws § 600.6013(8) | | | $120,124.69 |

(*See* ECF No. 73, PageID.2882–2883.)

Additionally, the lease provides that Defendants will be responsible for reasonable attorneys' fees and expenses incurred by Plaintiffs to enforce the lease in the event of a breach or default. (*See* ECF No. 41-1, PageID.551.) As of March 31, 2024, Plaintiffs incurred $230,750.00 and $36,609.90 in attorney fees and costs. (ECF No. 73-1, PageID.2898.)

Finally, Defendants have provided no arguments to the contrary.

## VI.

For these reasons, Plaintiffs' motion for default judgment (ECF No. 73) is GRANTED IN PART. It is ORDERED that:

1. Judgment will be entered in favor of Plaintiffs and against GLT, Tissue Depot, and CEBC, jointly and severally, in the amount of $2,706,496.72, plus prejudgment interest after April 8, 2024, at a rate of $351.28 per day, until the date of judgment. Interest shall accrue post-judgment at the rate provided under applicable law. Plaintiffs shall be entitled to recover their reasonable attorney fees and costs to collect and enforce this Judgment under applicable law.

2. Plaintiffs are entitled to possession of the equipment identified at (ECF No.73-1, PageID.2890–2892).The Judgment will resolve the breach of contract, claim and delivery, and fraudulent avoidance claims, except for the exercise of post-judgment collection and enforcement of the Judgment.

IT IS SO ORDERED.

Dated: May 24, 2024

                                      s/Laurie J. Michelson
                                      LAURIE J. MICHELSON
                                      UNITED STATES DISTRICT JUDGE